# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-60617-CIV-ALTMAN/Reid

**PHILANDER PHILIPPEAUX**,

    *Plaintiff*,

v.

**THE CITY OF CORAL SPRINGS**,

    *Defendant*.

_____/

## ORDER

Before the Hon. Roy K. Altman:

In February of 2014, the Plaintiff, Philander Philippeaux ("Philippeaux"), was pulled over for running a stop sign in Coral Springs, Florida. When the Coral Springs police officer noticed an open federal warrant out of New York, he took Philippeaux into custody and contacted the DEA, which arranged for Philippeaux's transfer to the Southern District of New York. Some months later, at his New York bond hearing, Philippeaux first learned that his NCIC falsely listed intimidating a witness, tampering with evidence, and obstruction as the reasons for his Coral Springs arrest. Philippeaux was detained and, ultimately, convicted in a New York courtroom on federal drug charges. In March of 2019, more than five years after he ran that stop sign, Philippeaux brought this civil rights action against the City of Coral Springs, alleging that its officer had forged the NCIC in a cynical effort to injure, embarrass, and defame him. Unfortunately for Philippeaux, five years was too long a wait.

## THE FACTS

On March 29, 2014, Officer Rojas of the City of Coral Springs Police Department ("City") stopped Philippeaux for running a stop sign. Am. Compl. [ECF No. 37] ¶ 4; Plaintiff's Mar. 29,

2014 Florida Uniform Traffic Citation (the "Ticket") [ECF No. 53-1].[1] During the stop, Officer Rojas checked the Florida Crime Information Center ("FCIC") and the National Crime Information Center ("NCIC") databases and found "an active [warrant] from the U.S. Marshals Service for Dangerous Drugs." Plaintiff's Mar. 29, 2014 Adult Warrant Short Arrest Form (the "Arrest Warrant") [ECF No. 37], Ex. AR.[2]

According to Philippeaux, Officer Rojas then proceeded to fraudulently "alter the [NCIC] arrest record[] from its true nature, 'Traffic Stop and activate capias', to 'intimidating and threatening witness informant, obstructing justice and tampering with evidence.'" Am. Compl. ¶ 5 (quoting Excerpt of Plaintiff's NCIC Record [ECF No. 37], Ex. CR at 2). Although Philippeaux's own attorney apparently suggested to him that the officer entered those codes—intimidation, obstruction, and tampering—"purely for administrative purposes" and because the officer "had no administrative code for an arrest based on a federal warrant," *see* [ECF No. 29-1], Ex. A-A at 2, Philippeaux attributes the entry to the workings of a sinister conspiracy against him. On Philippeaux's account, the "new fraudulent record was forwarded to D.E.A. Agent Wulff (New

---

[1] Although Philippeaux did not attach the ticket to his Third Amended Complaint, "courts may consider a document not attached to the complaint where: (1) the plaintiff's complaint refers to the document; (2) the document is central to the plaintiff's claim; (3) its contents are not in dispute; and (4) the defendant attaches the document to its motion to dismiss." *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1292 (S.D. Fla. 2015). The ticket is "central" to Philippeaux's claims because those claims turn on the alleged incongruity between what Philippeaux says he was arrested for and what the "arrest records" were "alter[ed]" to reflect. Am. Compl. ¶ 5. And Philippeaux does not dispute the ticket's authenticity. *See* Plaintiff's Response to Defendant's Motion [ECF No. 55], at 2 (disputing the ticket's relevance, but not its authenticity).

[2] The Court may consider the Arrest Warrant because Philippeaux attached it to his Third Amended Complaint and incorporated it there by reference, *see* Am. Compl. ¶ 4. *See also Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss.").

York) and used by Prosecutor Muckin (S.D.N.Y.) in proceedings to deny Plaintiff the right to due process." Am. Compl. ¶ 6.

Philippeaux was extradited to New York and, months later, was convicted by a jury of conspiring to import and distribute several kilograms of cocaine. *See* Sentencing Memorandum [ECF No. 53-3] at 4. Philippeaux does not allege that the jury in any way relied on the incorrect NCIC record. *See generally* Am. Compl. Rather, Philippeaux contends that the federal prosecutor in the Southern District of New York used the allegedly-doctored record at his June 9, 2014 bond hearing. *See* Compl. [ECF No. 1] at 8. During that bond hearing, the prosecutor, in detailing Philippeaux's criminal record, said: "The most recent arrest, which I believe there were arrests in Coral Springs, led to an arrest and taking into federal custody for attempt to obstruct justice." *See* Transcript of Bond Hearing, *United States v. Philippeaux*, No. 13-cr-00277, at 9 (S.D.N.Y. June 9, 2014), ECF No. 59 (hereinafter, "Transcript of Bond Hearing").[3] Philippeaux, however, never argues that the court relied on this representation in deciding to detain him. *See generally* Am. Compl. Nor could he. The court, after all, explained that it was denying Philippeaux's bond request because the property he had offered as collateral, first, had insufficient "substantiality" and, second, was the property of "a friend of the family," rather than "directly family connected." Transcript of Bond Hearing at 11.[4]

---

[3] The Court may take judicial notice of the transcript because it is a public record. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (holding that a district court properly took "judicial notice" of a "complaint filed in the Southern District of New York," because the complaint was a "public document"); *see also Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1076 (11th Cir. 2013) (relying on Federal Rule of Evidence 201 to take "judicial notice" of court documents contained in a state eviction action).

[4] Indeed, to the extent there was any confusion about the circumstances of Philippeaux's arrest, his lawyer quickly clarified the issue as follows: "I would like to begin with the unrelated law enforcement issue that resulted in him coming in contact with a traffic stop. He ran a stop sign. That really is not something that raises a danger or risk to the community. He came in contact with

Nearly five years passed before Philippeaux, on March 8, 2019, filed his Complaint. *See* Compl. The Magistrate Judge issued a thirty-three-page Report and Recommendation, which set forth in detail the Complaint's many deficiencies and suggested that it be dismissed. [ECF No. 26] (the "Initial Report"). Philippeaux then filed an amended complaint [ECF No. 29], which the Magistrate promptly struck for its failure to "cure the deficiencies identified" in the Initial Report. *See* [ECF No. 30]. Philippeaux filed a second amended complaint [ECF No. 31], which the Magistrate Judge struck again for the same reason, *see* [ECF No. 33]. Finally, on August 28, 2019, Philippeaux filed the operative Third Amended Complaint [ECF No. 37] (the "Third Amended Complaint"). *See* Am. Compl. In the Third Amended Complaint, Philippeaux says that, through the allegedly-false NCIC record, the City intentionally inflicted emotional and mental distress on him (Counts I and II), cast him in a false light and invaded his privacy (Count III), and defamed him (Count IV). *Id.* ¶¶ 7–10.

The City timely filed a Motion to Dismiss [ECF No. 40]. Philippeaux responded. *See* Response [ECF No. 42]. And the Motion to Dismiss ripened when the City filed its Reply [ECF No. 45]. Philippeaux also filed a Motion for Sanctions [ECF No. 43] and a Motion for Summary Judgment [ECF No. 44], which the City has moved to strike, *see* [ECF No. 47]. The Magistrate Judge issued an R&R [ECF No. 49], which recommended that the Court (1) grant the Defendant's Motion to Dismiss *with prejudice*, (2) deny the Plaintiff's Motion for Sanctions, (3) deny the Plaintiff's Motion for Summary Judgment, and (4) deny as moot the Defendant's Motion to Strike. *See* R&R at 9–25. Philippeaux timely objected [ECF No. 51] ("Objections").

---

a law enforcement officer while driving on his valid license. He ran a stop sign and had a [sic] interaction with a law enforcement officer." *See* Transcript of Bond Hearing at 9.

4

The Court ordered the parties to submit additional briefing on whether Philippeaux's § 1983 claim is time-barred. *See* Nov. 21, 2019 Order [ECF No. 52]. The Court also invited the parties to submit evidence on the question of timeliness and declared that it would consider any such materials in treating the Motion to Dismiss as a Rule 56 motion for summary judgment. *Id.* at 3. In response to that order, the Defendant filed a Supplemental Brief [ECF No. 53], and Philippeaux filed both a Declaration [ECF No. 54] and a Response to the Defendant's Supplemental Brief [ECF No. 55]. The Court has carefully reviewed the R&R, the parties' filings, the record, and the governing law. For the reasons set out below, the Court now **ADOPTS** the R&R and **DISMISSES** this case **with prejudice**.

## THE LAW

When a magistrate judge issues proposed factual findings and recommendations with respect to a dispositive motion, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When, as here, a party objects to a magistrate judge's proposed findings and recommendations, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *accord* FED. R. CIV. P. 72(b)(3). But, when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted).

## ANALYSIS

### I.   Shotgun Pleading

Philippeaux first objects to the Magistrate Judge's conclusion that his Third Amended Complaint should be dismissed as a shotgun pleading. *See* Objections at 1–3, 8–11. The Court

agrees with Philippeaux that the Third Amended Complaint is not a shotgun pleading. The Eleventh Circuit has identified four rough categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts," (2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (3) a complaint that does not "separat[e] into a different count each cause of action or claim for relief," and (4) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

On close examination, the Third Amended Complaint falls into none of these categories. With respect to the first category, Philippeaux asserts four counts—and each properly contains a different claim for relief. Am. Compl. ¶¶ 7–10. As for the second category, while the counts incorporate a common facts section, *see id.* ¶¶ 1–6, they do not, as *Weiland* proscribes, adopt the allegations in *each preceding count*. Looking at the third category, Philippeaux does not litter his allegations "with conclusory, vague, and immaterial facts." Finally, because Philippeaux has filed his Third Amended Complaint only against the City, the fourth *Weiland* category simply does not apply here.[5]

---

[5] In stark contrast to Philippeaux's initial Complaint, in which he named various federal and municipal agencies and parties as Defendants, *see* [ECF No. 1] at 1, the Third Amended Complaint plainly names only the City as "Defendant." Am. Compl. at 1. Although the Third Amended Complaint does make several factual allegations about "Officer Rojas," a City police officer, *see id.* at 1–3, it does not name Rojas as a defendant. In any event, these allegations are consistent with Philippeaux's theory that the City is liable for Officer Rojas' actions. *See id.* at 3–4; *see also* Response at 1 (criticizing the City's reference to multiple Defendants and emphasizing that "[t]he [Third] Amended Complaint [37] sues the 'City of Coral Springs.'"). Of course, were the Court to construe the Third Amended Complaint as proceeding against more than one Defendant, the Court would then find that it does fall squarely into the fourth *Weiland* category. In that scenario, the Court would dismiss the Third Amended Complaint with prejudice in light of the repeated

## II.     Failure to State a Claim

Nevertheless, the Third Amended Complaint fails to state a plausible claim for relief and, on that basis, must be dismissed. When adjudicating a Rule 12(b)(6) motion to dismiss, the Court must accept a complaint's factual allegations as true and should construe them in the light most favorable to the plaintiff. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level," with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Although the Court must liberally construe *pro se* pleadings, "*pro se* litigants are nonetheless required to conform their pleadings to procedural rules." *Hanna v. Florida*, 599 F. App'x 362, 363 (11th Cir. 2015) (citation omitted). *Pro se* litigants "cannot simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim . . . judges cannot and must not 'fill in the blanks' for *pro se* litigants; they may only cut some 'linguistic slack' in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (citation omitted).

The Third Amended Complaint alleges that the City is the "appropriate party" for "injuries caused by the negligent or wrongful act or omission of any employee acting within the scope of

---

admonitions Philippeaux has received about filing shotgun pleadings. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358–59 (11th Cir. 2018).

7

his or her employment" and for "injuries caused by Law Enforcement Officers arising out of abuse of process, misrepresentation, deceit or interference with contract." Am. Compl. at 3. But "[a] municipality may not be held liable for the torts of its employees on a respondeat superior theory." *Lewis v. City of Union City*, 934 F.3d 1169, 1190 (11th Cir. 2019). This is because "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Thus, "municipalities may only be held liable for the execution of a governmental policy or custom." *Lewis*, 934 F.3d at 1190 (internal quotation marks omitted).

The Third Amended Complaint points to no City policy or custom that either violated the Constitution or otherwise caused Philippeaux's purported injuries. Instead, it asserts only that the City failed adequately to train its police officers, *see* Am. Compl. at 1—an averment that "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. But the Third Amended Complaint never claims that the City's inadequate training constituted "deliberate indifference"—nor do its threadbare factual recitals raise an inference of any such "deliberate indifference." Philippeaux does not, for example, allege that the City was "aware that a pattern of constitutional violations exist[ed], and nevertheless fail[ed] to provide adequate training" or that the need for training officers not to commit perjury was so "obvious" that the City could be said to have been deliberately indifferent to that need. *See Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).[6] To the contrary, the Third Amended

---

[6] *Cf. Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir. 1992) ("Where the proper response—to follow one's oath, **not to commit the crime of perjury**, and to avoid prosecuting the innocent—is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference." (emphasis added)).

8

Complaint says only that "[t]hese allegations rise under the *Duty to Train* Theory," and that the City is "liable . . . for failing to train its officer not to commit perjury." Am. Compl. at 1. These bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *See Iqbal*, 556 U.S. at 679.

Along similar lines, Philippeaux objects to the R&R's conclusion that his claims for defamation and false light are insufficiently pled. *See* Objections at 7, 13–14; R&R at 18–20. But, to survive a Rule 12(b)(6) motion, a complaint must do more than simply recite the elements of a cause of action. The law "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

In support of his claims for defamation and false light, Philippeaux avers only that, "[a]s a result of the acts of Officer Rojas and the Coral Springs Police Department, plaintiff Philippeaux suffered False Light Invasion of Privacy and pain and suffering" and "extensive injuries including, but not limited to, defamation." Am. Compl. ¶¶ 9–10. These allegations are entirely conclusory, do not even recite the basic elements of the relevant causes of action, and fall well short of the *Twombly*/*Iqbal* standard. In any event, as discussed above, Philippeaux cannot prevail against the City on these claims unless he plausibly ties his injuries either (1) to some City policy or custom or (2) to the City's "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. He does neither.

Because, in short, the Amended Complaint fails to state a plausible § 1983 claim against the City, the Court hereby adopts the R&R's recommendation that the City's Motion to Dismiss be granted.

### III. Right to Amend

Federal courts should "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). For two reasons, the Court refuses to give Philippeaux a *fifth* bite at the apple here.

*First*, Philippeaux has repeatedly failed to cure his complaint's deficiencies—despite clear warnings from the Magistrate Judge. So, for instance, after reviewing his initial complaint, the Magistrate Judge issued a thirty-three-page Report and Recommendation, which explained—in detail—the complaint's many failings. In response, Philippeaux filed two additional complaints, both of which the Magistrate Judge struck because they failed to "cure the deficiencies previously identified by the . . . report." *See* [ECF Nos. 30, 33]. The operative Third Amended Complaint is thus Philippeaux's *fourth* attempt to state a claim. But, despite the Magistrate Judge's clear instructions, Philippeaux has *still* failed to state a viable claim for relief—in many cases, for the same reasons the Magistrate Judge identified in her initial Report. For example—and most glaringly—Philippeaux has yet to allege any City policy or custom that would plausibly expose it to liability under § 1983. Dismissal—without *yet another* opportunity to amend—is therefore proper. *See, e.g.*, *Lacy v. BP P.L.C.*, 723 F. App'x 713, 717 (11th Cir. 2018) (affirming dismissal with prejudice where, "despite multiple opportunities to do so, [the *pro se* plaintiff] failed to demonstrate that he would be able to resolve the defects in his amended complaint"); *McDonough v. City of Homestead*, 771 F. App'x 952, 956 (11th Cir. 2019) (affirming dismissal with prejudice

where *pro se* plaintiff repeatedly "received notice of his complaint's defects," yet failed to remedy them).

*Second*, any amendment would be futile because Philippeaux's claims are barred by the statute of limitations. *See* R&R at 13–16.[7] In § 1983 actions, federal courts borrow the statute of limitations from the most analogous state law. *See Owens v. Okure*, 488 U.S. 235, 240–41 (1989); *see also* 42 U.S.C. § 1988(a). For cases arising in Florida, "the four-year statute of limitations under Fla. Stat. § 95.11(3) applies to § 1983." *Ellison v. Lester*, 275 F. App'x 900, 901–02 (11th Cir. 2008) (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)).

Philippeaux alleges that, on March 29, 2014, a City officer arrested him and then altered the NCIC record to reflect a more serious criminal infraction. Am. Compl. ¶ 5. He also avers that, during a June 9, 2014 hearing, a prosecutor in the Southern District of New York cited to that falsified record to justify his request that Philippeaux be held in pre-trial detention. *Id.* ¶ 6; Compl. at 8. And, Philippeaux notes, the prosecutor's statements were efficacious because the court did, in fact, detain him. *See* Transcript of Bond Hearing at 11. But Philippeaux did not file this lawsuit

---

[7] The parties have submitted evidence on the question of timeliness, and so the Court will treat the City's Motion to Dismiss as a Rule 56 summary judgment motion solely for purposes of resolving whether Philippeaux's § 1983 claim is timely. See FED. R. CIV. P. 12(d). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Facts genuinely in dispute "must be viewed in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment should be granted. *Id.* at 322.

until March 2019—nearly five years *after* these events occurred. Given Philippeaux's nearly five-year delay, his claims are barred by Florida's four-year statute of limitations. In these circumstances, then, any amendment would be futile. *See, e.g.*, *Salas v. Pierce*, 297 F. App'x 874, 879 (11th Cir. 2008) ("We conclude from the record that an amendment to [the plaintiff's] complaint . . . would have been futile because . . . his claims are barred by the statute of limitations.").

Philippeaux advances two objections to this conclusion, neither of which survives scrutiny.

Philippeaux first argues that the four-year clock began running, not in 2014, but in September of 2016, when he obtained his legal papers from his former attorneys—at which point, he says, he "became a person with reasonably prudent regard for his right, and [the] cause of action became apparent." Objections at 12 (emphasis omitted). Philippeaux is correct that a cause of action under § 1983 does not accrue until a plaintiff "know[s] or should know" that he has "suffered an injury that forms the basis of [his] complaint." *Hillcrest Prop., LLC v. Pasco Cty.*, 754 F.3d 1279, 1281 (11th Cir. 2014) (alterations and internal quotation marks omitted). But Philippeaux knew—or, certainly, should have known—about the altered record at least as far back as the S.D.N.Y. bond hearing on June 9, 2014. After all, by Philippeaux's own rendition of the facts, it was at that bond hearing that the prosecutor—in Philippeaux's presence—used the flawed record in support of the Government's request for pre-trial detention. And, no less significant, it was at that hearing that Philippeaux's lawyer—again, with Philippeaux present—told the court that the arrest record was wrong and that Philippeaux had been pulled over in Coral Springs for running a stop sign. Philippeaux, in short, was put on notice of the facts that give rise to his claim in June of 2014—well beyond the four-year statutory window. *See, e.g.*, *Dennis v. U.S. Dep't of Justice*, 228 F. App'x 861, 864 (11th Cir. 2007) (noting that the plaintiff's claims were time-barred

because he could have learned the pertinent facts "through reasonable diligence, and thus, he *should have known*" of his cause of action).[8]

Philippeaux next contends that the statute of limitations should be tolled. *See* Objections at 6, 12. The Eleventh Circuit has instructed district courts to look to state law in deciding whether to toll the statute of limitations in a § 1983 case. *See Lawson v. Glover*, 957 F.2d 801, 805 (11th Cir. 1987) (deferring to the Georgia Court of Appeals' interpretation of the Georgia tolling statute); *see also Lewis v. Broward Cty. Sch. Bd.*, 489 F. App'x 297, 298–99 (11th Cir. 2012). By statute, Florida law tolls the applicable statute of limitations in nine enumerated circumstances. *See* Fla. Stat. § 95.051(1). As the Florida Supreme Court has explained, that statutory list is exhaustive. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001) (holding that § 95.051 "delineates an **exclusive** list of conditions that can 'toll' the running of the statute of limitations." (emphasis added)). None of the nine conditions set out in the Florida statute applies here.

Perhaps recognizing his inability to meet any of the enumerated factors, Philippeaux instead points to several decisions in which Florida courts have *equitably* tolled a statute of limitations because "the Plaintiff has been misled or lulled into inaction." *See* Objections at 12 (citing *Williams v. Albertson's Inc.*, 879 So. 2d 657, 659 (Fla. 5th DCA 2004)). But several courts have held (and the Eleventh Circuit has intimated) that, under Florida law, the "misled or lulled" standard applies only in "administrative proceedings"—and not in "civil rights and personal injury

---

[8] Philippeaux's suggestion that he did not develop a reasonably prudent regard for his rights until 2016 is irrelevant. The question is not when the plaintiff developed a reasonably prudent regard for his rights, but whether "the facts which would support a cause of action . . . *should be apparent* to a person with a reasonably prudent regard for his rights." *Foudy v. Indian River Cty. Sheriff's Office*, 845 F.3d 1117, 1123 (11th Cir. 2017) (emphasis added) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996)). And, again, the relevant facts about the NCIC record "should have been apparent" to Philippeaux at least as early as June of 2014—when they became the subject of debate at his bond hearing.

cases" like this one, which are "exclusively" governed by the nine tolling circumstances set out in the Florida code. *See Rager v. Augustine*, 760 F. App'x 947, 950 (11th Cir. 2019); *Pinares v. United Techs. Corp.*, 2018 WL 10502426, at *5 (S.D. Fla. Nov. 14, 2018) ("[T]he Court finds that equitable tolling is limited to administrative actions."); *HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So. 2d 1094, 1098 (Fla. 2d DCA 2004) (declining to expand the "misled or lulled" standard beyond "the administrative law context" because, for civil cases, "the legislature has made clear its intent to exclude all tolling exceptions not listed in" Section 95.051).[9]

Even if the "misled or lulled" standard applied here, Philippeaux could not meet that standard in any event. In support of his claim that his attorneys "consistently misled [him] and forcefully lulled [him] into inaction," Philippeaux cites a single email, dated October 1, 2015, in which his lawyer told him that "it is common practice that police dept. enters any charges they want, as long as they don't have an administrative code for the charges at issue." *See* Objections at 12 (citing Ex. A-A). But Philippeaux does not say how his lawyer's statement about the City's practices was in any way misleading. Nor does he explain why this statement "forcefully lulled" him into inaction. Nor could he. *First*, Philippeaux never indicates that his lawyers ever discouraged him from bringing a claim based on the NCIC record. *Second*, far from lulling Philippeaux into inaction, one would expect that his understanding of the City's regular practice

---

[9] Indeed, by its own terms, Florida's tolling statute provides an *exhaustive* list of circumstances that can toll an action, and "equitable tolling" is not on that list. *See* Fla. Stat. § 95.051(2) ("A disability or other reason does not toll the running of any statute of limitations except those specified in this section . . . ."); *see also Razor Capital, LLC v. CMAX Fin. LLC*, 2017 WL 3481761, at *3 (S.D. Fla. Aug. 14, 2017) ("This Court has previously held that Florida law does not permit the application of equitable tolling based on circumstances not listed in Florida Statute § 95.051.5. . . . Specifically, the Court has found that equitable tolling is limited to administrative actions."); *Baez v. Root*, 2014 WL 1414433, at *3 (S.D. Fla. Apr. 11, 2014) ("Under Florida law, however, equitable tolling is unavailable outside of the administrative context."); *Lopez v. Geico Cas. Co.*, 968 F. Supp. 2d 1202, 1206 (S.D. Fla. 2013) ("Equitable tolling is unavailable outside of the administrative context . . . .").

14

of falsifying reports might have *encouraged* him to file suit. *Third*, on Philippeaux's own account, he became aware of his cause of action in September of 2016—approximately a year and a half *before* the four-year statute of limitations expired. Nowhere does he even attempt to explain why he waited to sue until March of 2019—nearly a year *after* the clock had already run. It would be one thing, in other words, if Philippeaux had only learned of his cause of action after his window had closed. But equity should not provide relief to a plaintiff who—like Philippeaux—sat on his claim for an additional two and a half years before finally raising it.[10] *Fourth*, to allow a plaintiff to equitably toll *every* claim that his lawyer decided not to pursue would greatly expand the doctrine of equitable tolling, whose ambit courts have been careful to circumscribe. *See, e.g.*, *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir.1993) (equitable tolling is "an extraordinary remedy which should be extended only sparingly"); *cf. Downs v. McNeil*, 520 F.3d 1311, 1319 (11th Cir. 2008) (holding, in the habeas context, that "[m]ere attorney negligence [will] not justify equitable tolling" (quoting *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000))). For all these reasons, the Court refuses to toll the statute of limitations here.

On this record, then, Philippeaux's § 1983 claim is time-barred. And, because this fact renders any future amendments futile, the Court **DISMISSES** this case **with prejudice**.

## IV. Sanctions

Philippeaux objects to the R&R's recommendation that the Court deny his Motion for Sanctions. *See* Objections at 4–5. Philippeaux asks for sanctions on the ground that the City

---

[10] *See, e.g.*, *Washington v. Keitz*, 2015 WL 11251907, at *4 (S.D. Fla. June 30, 2015) (rejecting equitable tolling where plaintiffs' counsel waited "over two weeks" after recognizing an issue); *Hummer v. Adams Homes of Nw. Fla., Inc.*, 2014 WL 897083, at *3 (M.D. Fla. Mar. 6, 2014) ("Equitable tolling is not appropriate where the causal connection between nonconforming conduct and Plaintiffs' injuries/damages was made known to Plaintiffs well within the statute of limitations.").

"presented . . . pleadings for improper purpose, such as to harrass [sic], to cause unnecessary delay, but more *specifically* to needlessly increase the cost of litigation on Plaintiff." Mot. for Sanctions at 2. But the Court finds absolutely no basis in the record to justify the imposition of sanctions against the City.

\* \* \*

Throughout his briefing, Philippeaux—while addressing the many legal issues presented—expressed some concern that "pro se litigants have the scale of justice tilted against them." *See, e.g.*, Objections at 1–2. The Court is sympathetic to litigants, like Philippeaux, who, though often unschooled in the nuances of civil law, attempt to navigate their way—sometimes from prison—through what has become a complicated and sometimes-unwelcoming juridical landscape. It is, after all, difficult enough to litigate a case *with* legal training and from the *outside*. For this reason, the Court is always mindful that "[*p*]*ro se* pleadings generally are held to less stringent standards than counseled briefs." *Smith v. Fla. Dep't of Corr.*, 318 F. App'x 726, 727 (11th Cir. 2008). The Court also emphasizes that it is among its highest obligations as the "the central dispute-settling institution[] in our society . . . to do equal justice under law, to rich and poor alike." *Boddie v. Connecticut*, 401 U.S. 371, 388 (1971) (Brennan, J., concurring in part). Ultimately, however, in every case, the Court must apply the law to the facts, and—for the reasons described in this Order—that analysis is dispositive here.

The Court therefore **ORDERS AND ADJUDGES** as follows:

1. The Magistrate Judge's R&R [ECF No. 49] is **ADOPTED in part**.[11]

---

[11] The Court does not adopt the R&R to the extent it concludes that the Amended Complaint is a shotgun pleading. On the other hand, the Court has carefully reviewed, and finds no clear error in, those portions of the R&R to which neither party has objected. *See* FED. R. CIV. P. 72 advisory committee's notes (when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

2. The City's Motion to Dismiss [ECF No. 40] is **GRANTED**. The Plaintiff's Third Amended Complaint [ECF No. 37] is **DISMISSED with prejudice**.

3. The Plaintiff's Motion for Sanctions [ECF No. 43] and Motion for Summary Judgment [ECF No. 44] are **DENIED**.

4. The City's Motion to Strike [ECF No. 47] is **DENIED AS MOOT**.

5. The Clerk shall **CLOSE** this case. All pending hearings are **CANCELED**. Any pending deadlines are **TERMINATED**.

6. In accordance with Federal Rule of Civil Procedure 58, final judgment will be entered separately.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 1st day of June 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record; Plaintiff, *pro se*